UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PARKER RAYFORD,

    Petitioner,

v.                                                                             Civil Action No. 3:09cv410

GENE JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner Parker Rayford, a state prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (Docket No. 1.) Rayford challenges his convictions in the Circuit Court for the City of Hampton, Virginia ("Circuit Court") for three counts of murder, one count of attempted robbery, and four counts of use of a firearm during the commission of a felony. Rayford asserts two grounds for relief:

    Claim One:    The state court erred in affirming his convictions in violation of his Fourteenth Amendment[2] right to a fair trial when the trial court permitted inadmissible evidence; and

    Claim Two:    The state court erred in affirming his convictions in violation of his Fourteenth Amendment right to due process of law because the evidence adduced at trial insufficiently supported his convictions.

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

(Pet'r's Br. 15.)[3] Respondent filed a motion to dismiss and Rule 5 answer (Docket Nos. 5, 6) and appropriate *Roseboro*[4] notice (Docket No. 8). Respondent argues that Claim One is unexhausted and procedurally defaulted.[5] Respondent also contends that Claim Two lacks merit. Rayford responded. (Docket No. 11.) The matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 636(c) and 2254.

## I. Procedural History

On February 2, 2007, the Circuit Court convicted Rayford of "three counts of murder, [one count of] attempted robbery, and four counts of use of a firearm." (Resp't's Mem. ¶ 1.) The Circuit Court sentenced Rayford to life imprisonment for each count of murder, ten years for attempted robbery, and five years for each conviction of use of a firearm. (Resp't's Mem. ¶ 2.)

Rayford appealed, unsuccessfully arguing that the evidence was insufficient to convict him and that the Circuit Court impermissibly admitted testimony proffered by two of the Commonwealth's witnesses. *See Rayford v. Comm.*, No. 0328-07-1 (Aug. 9, 2007) (Va. Ct. App. Op. 3-6.) On March 25, 2008, the Supreme Court of Virginia refused Rayford's petition for appeal on March 25, 2008. *Rayford v. Comm.*, No. 072271 (Mar. 25, 2008). Rayford did not file a state petition

---

[3] Rayford submitted a brief in support of his Petition and numbered consecutively the pages of his Petition and accompanying brief. The Court refers to the entirety of Rayford's submission as Petitioner's Brief and cites Rayford's handwritten numbers. Rayford's brief contains two pages numbered "15." Here, the Court cites the second page 15.

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[5] Respondent contends that Rayford did not raise the federal constitutional aspects of Claim One before the Supreme Court of Virginia. (Resp't's Mem. Supp. Mot. Dismiss & Rule 5 Answer ("Resp't's Mem."), ¶ 13.)

for a writ of habeas corpus. (Pet'r's Br. 5, 7.) On June 29, 2009, the Court docketed the instant federal Petition.

## II. Claim One: Exhaustion and Procedural Default

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). To exhaust state court remedies, a petitioner must present his or her claims to a state's highest court before raising them in a federal habeas petition. *Matthews*, 105 F.3d at 911. Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (*citing Brown v. Allen*, 344 U.S. 443, 447 (1953)). Exhaustion requires that "a habeas petitioner . . . fairly present his claim to the state's highest court." *Matthews*, 105 F.3d at 911 (*citing Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994)). That is, the petitioner must fairly present his exact legal theory for relief to the state courts. *See Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Matthews*, 105 F.3d at 911 (quotations omitted). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

3

The related but distinct doctrine of procedural default provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, a federal habeas court is precluded from reviewing the merits of a defaulted claim. *Roach v. Angelone*, 176 F.3d 210, 221 (4th Cir. 1999); *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

Rayford failed to fairly present Claim One, alleging a Fourteenth Amendment violation as a result of the Circuit Court's admission of impermissible evidence, to the highest state court. Rather, Rayford asserted that the admission of the evidence in Claim One violated state law. Rayford presented the following claims to the Supreme Court of Virginia:

1) The Court of Appeals erred in affirming the trial court's denial of Rayford's motion to strike and motion to set aside the verdict.

2) The Court of Appeals erred in affirming the trial court's admission of evidence of other crimes, namely, an alleged robbery and shooting by Rayford in Portsmouth on June 8, 2005, where the evidence was far more prejudicial than probative and deprived Rayford of a fair trial.

3) The Court of Appeals erred in affirming the trial court's decision overruling Rayford's hearsay objection to Toni Taliaferro's testimony that Lamont Mason "said he didn't kill anybody. He wouldn't harm anyone

4

like that. Rayford did. Rayford was crazy. That's all I can remember. He just said he didn't do it."

(Pet'r's Br. Sup. Ct. Va. 1.) None of Rayford's alleged appellate grounds raises a constitutional claim. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so . . . ."). Rayford's general assertion that the trial court's evidentiary rulings deprived him of a "fair trial" (Pet'r's Br. Sup. Ct. Va. 1) did not fairly present the instant federal constitutional claim. *See Baldwin*, 541 U.S. at 32; *Henry*, 513 U.S. at 366 (noting that the similarity of claims is insufficient to exhaust). Thus, Rayford did not fairly present Claim One to the Supreme Court of Virginia.

Were Rayford now to present Claim One to the Supreme Court of Virginia, that court would find the claim barred. *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (finding petitioner's claims barred because the alleged constitutional defects were known to and could have been raised by petitioner on direct appeal); *see also* Va. Code § 8.01-654(A)(2) (requiring that state habeas petitions be filed within two years from the date of final judgment or within one year from the final disposition of the direct appeal in state court). The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that 'the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision.'" *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998) (*quoting Mu'min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1997)). Similarly, the Fourth Circuit has determined that Virginia's habeas statute of limitations, Virginia Code § 8.01-654(A)(2), constitutes an adequate and independent state procedural rule. *See Mueller v. Angelone*, 181 F.3d 557, 583-84 (4th Cir. 1999); *Yeatts v.*

5

*Angelone*, 166 F.3d 255, 263-64 (4th Cir. 1999); *Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986). Therefore, Claim One is procedurally defaulted. *Breard*, 134 F.3d at 619; *Matthews*, 105 F.3d at 911. Rayford has not advanced any basis for excusing his default. Accordingly, Claim One will be DISMISSED.

### III. Claim Two: Sufficiency of the Evidence

When evaluating a sufficiency of the evidence claim, a court must ask "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The Court need not determine whether the trial court established guilt beyond a reasonable doubt, or whether the federal court itself believes the evidence at trial established guilt beyond a reasonable doubt. *Id.* at 318-19. Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Furthermore, the Court must view the evidence in the light most favorable to the prosecution and defer to the findings of fact by the state trial and appellate courts. *Id.* at 319; *see* 28 U.S.C. § 2254(e)(1).

Rayford contends that the evidence adduced at trial was insufficient to identify him as the perpetrator of the three murders, attempted robbery, and the related firearms charges. Specifically, Rayford contends that Clinton Lamont Mason was the "sole witness who attempted to link [Rayford] to the alleged murders" (Pet'r's Mem. Supp. Reply 1), and that Mason's testimony lacked credibility because a witness for the defense impeached Mason. Rayford argues that the facts adduced at trial "demonstrate that it was 'Clinton Mason' who had the motive and opportunity to commit the alleged killings and the further motive to place blame on another party

6

because of the overwhelming evidence indicating his own guilt." (Pet'r's Mem. Supp. Reply 1 (spelling corrected).) The Court of Appeals aptly summarized the evidence as follows:

> At about 2:30 a.m. on July 10, 2005, police officers found the dead bodies of Arien Smith, Erik Brockington, and Fred Conyers inside a Ford Focus in front of 21 Eastmoreland Drive in Hampton. All three victims had been shot to death. The path of the bullets as they struck the victims suggested that the shooter had fired from the driver's side of the vehicle.
> From the exterior of the Ford Focus the police recovered fingerprints of James Terriault and Clinton Mason. Mason's fingerprints were located on the front and rear passenger side doors.
> On the night of July 9 and in the early morning hours of July 10, 2005, [Rayford] and Mason attended a party at the home of Donna Bromell at 36 Eastmoreland Drive. Having already consumed drugs and alcohol during the party, Mason obtained Smith's telephone number from Jarrell Hood. Mason called and asked Smith to sell him some ecstasy. Smith agreed to meet Mason on the street. Mason and [Rayford] left Bromell's house together.
> When Smith appeared in his car, Mason approached the passenger side of the vehicle, and [Rayford] went to the driver's side. Mason spoke with the passenger of the vehicle, who obtained a pill from the driver. As Mason was examining the pill, he heard [Rayford] say, "Give me that." Mason saw [Rayford], holding a gun, on the driver's side of the vehicle. Mason took off running. Mason saw [Rayford] open the driver's door of the vehicle, heard gunshots, and saw lights flash within the car.
> . . . .
> Several days after the crimes, Mason spoke with Hood outside his auto repair shop. Mason told Hood he "didn't shoot them boys," but that [Rayford] had done it. . . .
> Bromell stated that [Rayford] remained at her home on July 10 until the police left the area. The police arrested [Rayford] in Florida on July 29, 2005. [Rayford] had used a false name to purchase the bus tickets to Florida.
> On August 16, 2005, the police found a nine-millimeter handgun hidden in the backyard of Bromell's home. The handgun was determined to be the weapon used to kill Smith, Brockington, and Conyers. The gun had been stolen from Wayne Veney during a robbery on June 8, 2005 in Portsmouth. Veney testified that one of the men who committed the robbery wore a mask, but that his arm was tattooed in the same distinctive fashion as [Rayford's].
> . . . Corey Neal testified that on July 9, 2005, Mason called and asked Neal to find someone for Mason to rob. . . . Mason called Neal later and said he had done a robbery, which he referred to as a "lick." Mason said the "lick" had gone badly, so he "had to clap" someone. Neal testified that to "clap" someone means to shoot them. Neal admitted having prior felony convictions. Neal also admitted

7

> that his pending sentence for a federal conviction could be reduced if he provided information regarding other crimes.
>
> . . . .
>
> . . . Called as a Commonwealth's witness in rebuttal, [Toni] Taliaferro [a friend of Mason's] testified that after July 10, 2005, Mason told her he did not kill anyone, but [Rayford] did.
>
> . . . .
>
> In light of the impeachment of Mason provided by Neal's testimony, Taliaferro's testimony about Mason's statement to her was admissible as a prior consistent statement.

(Va. Ct. App. Op. 1-6 (footnotes omitted).) In sum, in support of Rayford's guilt, the Commonwealth proffered the testimony of an eyewitness and testimony from other corroborating sources, Toni Taliferro and Wayne Veney. Mason's fingerprints on the passenger side of the door were consistent with his testimony. Forensic evidence suggested that the shooter operated from the driver's side of the car, which also was consistent with Mason's testimony. The murder weapon was found in Bromell's yard, an acquaintance of Rayford's. The court found this evidence sufficient to support a finding of guilt beyond a reasonable doubt. Furthermore, the court determined that "[t]he jury was entitled to resolve any conflicts in the evidence." (Va. Ct. App. Op. 3.) Therefore, a review of the record in the light most favorable to the Commonwealth establishes that a rational factfinder could have found that Rayford committed the crimes. Thus, Rayford does not merit habeas relief. Claim Two will be DISMISSED.

## IV. Conclusion

Therefore, the Court will GRANT Respondent's motion to dismiss. (Docket No. 5.) The Court will DENY Rayford's Petition and DISMISS the action. (Docket No. 1.)

Let the Clerk send a copy of this Memorandum Opinion and Order to Petitioner and counsel for the Respondent.

It is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 2-4-10